In Re: Appeal of FPA Corporation From the Decision of the Newtown Township Zoning Hearing Board. The Township of Newtown, Appellant.

Argued October 19, 1984, before Judges CRAIG, DOYLE and COLINS, sitting as a panel of three.

*Stephen B. Harris, Harris and Harris,* for appellant.

*Richard P. McBride, McBride and Murphy,* for appellee.

OPINION BY JUDGE DOYLE, December 13, 1984:

This is an appeal of an order of the Court of Common Pleas of Bucks County directing the Newtown Township Board of Supervisors (Board) to provide the FPA Corporation with "any and all development agreements and other documentation required as a condition precedent to the issuance of permits, and thereafter cooperate with FPA Corporation in all acts necessary for the issuance of building permits for all or any portion of the 272 dwelling units previously approved by the Township."

This case has been in litigation for nearly a decade and, unfortunately, a somewhat lengthy history of the case will be necessary. On June 30, 1972 FPA filed an application for a zoning permit to construct a project termed "Golden Acres." The project pro-

posed the construction of single family residences, senior citizen units, multi-family uses, apartments and townhouses. At the time the application was filed the only permitted residential use under the Newtown Township Zoning Ordinance was single family dwellings on lots containing at least 40,000 square feet. FPA raised a constitutional challenge to the exclusionary zoning ordinance and the Honorable ARTHUR B. WALSH, JR., issued an order, dated June 28, 1975, declaring the ordinance unconstitutional and remanding the case to the Board for further proceedings with respect to other sources of Township control. *FPA Corporation v. Newtown Township*, 27 Bucks 146 (1975). This Court upheld Judge WALSH's order. *FPA Corporation Appeal*, 25 Pa. Commonwealth Ct. 221, 360 A.2d 851 (1976).

The parties then entered into a written agreement which was incorporated into the June 28, 1975 order of the court by a subsequent order entered on October 5, 1977, and which had the effect of thus modifying the June order. The October 5, 1977 modified order provided in pertinent part:

3. The Board and FPA, being desirous of realizing sound and orderly development of the property *without arbitrary or artificial time constraints* upon the completion and sale of dwelling units in any stage, agree that no subsequent changes in zoning, planned residential development, subdivision, land development or other ordinances of Newtown Township shall impair or alter the right of FPA its successors and assigns to develop the subject property under and pursuant to the terms of this agreement and as reflected upon Exhibit "A" attached hereto, without regard to the number of years that are required to develop the subject property, unless and until the terms of develop-

ment are subsequently modified by written agreement by and between the Board and FPA.
. . . .

6. The reason for the absence of any ultimate time limitation upon the development of the property pursuant to the terms and provisions of this agreement and as depicted upon Exhibit ''A'' attached hereto is the desire of the Board and FPA to allow the development of the subject property to proceed in an orderly and proper manner as governed by demand in the marketplace for residential development in Newtown Township, *rather than by artificial or arbitrary time restraints* which might otherwise compel accelerated development. (Emphasis added.)

Subsequent to October 5, 1977, FPA filed subdivision plans; preliminary approval was granted by the Board on October 2, 1978; final approval was granted on April 16, 1979. Then, on May 19, 1983 the Board notified various authorities and agencies involved in the approval process (such as water and sewer authorities) that the Board would no longer recognize any development rights in FPA. Consequently, on June 9, 1983 a petition for enforcement of the October 5, 1977 court order and injunctive relief was filed by FPA. Subsequent to a hearing on the merits, the Honorable KENNETH G. BIEHN, by order dated October 19, 1983, directed the Board to provide FPA with the development agreements and other documentation which were required as a condition precedent to the issuance of building permits. This appeal followed.

At issue here is whether the time limitation which appears in Section 508 (4) of the Pennsylvania Municipalities Planning Code (MPC)[1] has cut off FPA's

---

[1] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10508.

rights or whether, instead, the agreement of the parties which was incorporated into the October 5, 1977 modified court order has preserved FPA's development rights. At the time the plans were approved Section 508(4) of the MPC provided in pertinent part:

When an application for approval of a plat, whether preliminary or final, has been approved or approved subject to conditions acceptable to the applicant, no subsequent change or amendment in the zoning, subdivision or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval within three years from such approval.[2]

The Township takes the position that FPA was, thus, limited to three years from the date the plan was finally approved (April 16, 1979) and was not free to continue its project thereafter. Counsel for FPA has stipulated that FPA has not commenced installation of any of the improvements shown on the final plan of the section here in dispute.[3]

FPA takes the position that Section 508 (4) is irrelevant to this case because FPA's rights were established pursuant to the October 5, 1977 court order

---

[2] Although Section 508(4) was again amended in 1982 to provide for a five year grace period, this case is, of course, controlled by the statute which was in effect when the matter arose.

[3] In August of 1983 the Board in conjunction with Newtown Borough, Upper Makefield Township and Wrightstown Township, enacted a joint zoning ordinance. Counsel for the Board has stipulated that FPA does not meet the requirements of the joint zoning ordinance. Thus, the Board argues that because the time period has run under Section 508(4) and because FPA does not meet the joint zoning ordinance requirements, the Board need not execute the security agreements which would permit the project to proceed.

rather than pursuant to the zoning and subdivision ordinances of the Township.

In ascertaining whether the three year time limit in the MPC is applicable here, we must begin with an examination of the initial order filed by Judge WALSH on June 28, 1975. That order declared the zoning ordinance unconstitutional and reversed and remanded the case to the Board for further proceedings and review with respect to other sources of Township control. The Pennsylvania Supreme Court, itself, fashioned a similar order in *Casey v. Zoning Hearing Board of Warwick Township,* 459 Pa. 219, 328 A.2d 464 (1974). Pursuant to Judge WALSH's order, FPA was still required to obtain approval from the Board, and we are of the view that the order *as it existed on June 28, 1975* meant that the approval would be governed by the criteria set forth in Section 508 (4) of the MPC.

Then, on October 5, 1977, the June 1975 order was *modified by agreement of the parties.* This modification occurred *prior to* FPA's receiving either preliminary or final approval for the section of Golden Acres in dispute. Thus, the approval would be governed by the terms of the modified order.

A complete reading of the modified order reveals that the MPC was to play a part in the Board's determination. Section 17 of the modified order specifically states:

Development plans for all sections or phases of the subject property will require preliminary and final plan submission and review, without any sketch plan submission or review, and the Board, in its review of both preliminary and final development plans for all sections or phases shall render its decision within 90 days from the date of submission of such plans, said 90 day period to apply to prelim-

inary and final plans individually, said decision to comply with the formal requirements of approval or rejection as set forth at Section 508 of the Municipalities Planning Code, 53 P.S. 10508, as presently in existence.

One of the provisions under Section 508(4) as it then existed was, of course, the three year time limitation. But, it is our considered opinion that the time limitation provision has, in this case, been waived by the language appearing in sections 3 and 6 of the modified order. In particular the references to ''artificial time constraints'' (of which the three year limitation is certainly one) clearly must be read to mean that the three year time limit is inapplicable in this situation. To do otherwise would be to ignore certain provisions of the agreement between the parties. We also note that Subsection (3) of Section 508 recognizes that the parties may wish to alleviate certain time pressures and, thus, permits the parties to alter the "deemed approval" provisions of the MPC.[4]

As Judge BIEHN succinctly stated in his opinion, ''FPA's plan was enacted pursuant to a Court-ordered set of criteria, [including the criteria in the modified order] not pursuant to the original zoning ordinance.'' It is this fact which distinguishes this case from every case cited by the Board. Simply

---

[4] Section 508 (3), provides:

Failure of the governing body or agency to render a decision and communicate it to the applicant within the time and in the manner required herein shall be deemed an approval of the application in terms as presented *unless the applicant has agreed in writing to an extension of time or change in the prescribed manner of presentation of communication of the decision*, in which case, failure to meet the extended time or change in manner of presentation of communication shall have like effect. . . . (Emphasis added.)

stated, the parties agreed not to be bound by the three year time limitation; moreover, that agreement was reduced to a court order. Thus, cases such as *Bensalem Township Appeal,* 50 Pa. Commonwealth Ct. 354, 413 A.2d 1142 (1980) (Mark-Garner); *Bensalem Township Appeal,* 47 Pa. Commonwealth Ct. 334, 408 A.2d 550 (1979) (Central Penn National Bank), and *Casey,* none of which contained such an agreement, are not persuasive authority for the Board's contention that adherence to the three year time limitation is required.

We are mindful that our decision today could be construed to give FPA an unbridled extension of time. We expressly state that this is not the case. We trust that the parties will abide by the trial court's order and will be governed by the standards of reasonableness and good faith. We do note that the record has failed to disclose any instance where the delays suffered by FPA were of its own doing. We do not feel it is wise to impose an arbitrary time scheme on the parties, especially when we have interpreted their agreement as an intent not to be bound by such a restraint. But, we are, nonetheless, concerned with the protracted litigation this case has generated. Accordingly, while we will affirm the trial court, we will also direct it to retain jurisdiction of the matter for the purpose of insuring that the parties move forward with due diligence, reasonableness, and good faith. The order of the Court of Common Pleas of Bucks County is affirmed.

ORDER

Now, December 13, 1984, the order of the Court of Common Pleas of Bucks County dated October 19, 1983, is hereby affirmed. This case is remanded to the Court of Common Pleas of Bucks County with directions that the Common Pleas Court retain juris-

450

diction for the purpose of monitoring the parties' conduct to insure compliance with its October 19, 1983 order. Jurisdiction relinquished.